Pamela Lynn RADOSEVIC, Plaintiff,

v.

VIRGINIA INTERMONT COLLEGE,
et al, Defendants.

Civ. A. No. 85–0247–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Jan. 6, 1987.

See also, 633 F.Supp. 1084.

Wendal D. Jackson, J.D. Bowie, S. Gray Robinson, Bristol, Va., for plaintiff.

George M. Warren, Jr., Bristol, Va., Phillip Anderson, James R. Austin, T. Daniel Frith, III, Roanoke, Va., William W. Eskridge, Jackson S. White, Abingdon, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on Servicemaster Management Services Corp.'s ("Servicemaster") motion for summary judgment.

The underlying facts are as follows. Virginia Intermont College ("V.I.") is a private, liberal arts four-year college located in Bristol, Virginia. It contracts with an independent company to provide it with housekeeping and maintenance services. From mid–1975 through mid–1983, A.R.A. Environmental Services, Inc. ("A.R.A.") furnished these services. Effective May 16, 1983 Servicemaster replaced A.R.A.

Plaintiff, Pamela Lynn Radosevic ("Radosevic"), attended V.I. as a full-time student during the 1983–84 academic year. On April 14, 1984 an unusually forceful wind caught and lifted a 65–pound unse-

cured[1] roof access hatch cover, which subsequently flew through the air and struck Radosevic permanently paralyzing her.

Radosevic brought suit against V.I., A.R.A., and Servicemaster. She subsequently settled with V.I. and A.R.A. leaving Servicemaster the sole defendant in the original action.[2] Radosevic asserts two theories of liability. First she claims that Servicemaster breached its contractual duty to her as a third party beneficiary of its contract with V.I. Secondly she alleges that Servicemaster's negligent performance or negligent nonperformance of its contractual duty gives rise to an independent tort cause of action. Servicemaster has moved for summary judgment as to Radosevic's claims against it.

Generally one not a party to a contract does not have standing to sue for breach of that contract. However, many legislatures have modified this common law bar. The pertinent Virginia statute provides:

> § 55-22. When person not a party, etc., may take or sue under instrument.—An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well. (Code 1919, § 5143.)

Va.Code Ann. tit. 55, § 22 (1986).[3]

Judicial interpretation of statutes providing for third party beneficiary suits distinguishes between incidental beneficiaries and intended beneficiaries with only the latter having standing to sue. These two terms are antithetical by definition: an incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract whereas an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a court will permit him to sue on that contract. This distinction rests upon the basic premise of the law of contracts that a court will not enforce a contract absent two mutually bargained for considerations; and, consequently, courts will not impose an additional unbargained for obligation on a contracting party.

Likewise Virginia courts differentiate between incidental and intended beneficiaries. In order for a third party beneficiary to qualify as an intended beneficiary, he must demonstrate that the contracting parties clearly and definitely intended to directly benefit him. *Norfolk-Portsmouth Newspapers, Inc. v. Stott*, 208 Va. 228, 156 S.E.2d 610 (1967). *See also Padgett v. Bon Air Realty Co.*, 150 Va. 841, 143 S.E. 291

---

**1.** The roof access hatch cover lies flush with the roof itself. A series of rings protrudes from the edge of the cover and fits between another series of protruding rings on the roof. Because the cover is not permanently affixed to the roof some interlocking device—a pin, a wire, etc.—must thread through the center of the rings to secure the cover. No such safety device grounded the cover at the time of the accident.

**2.** All cross-claims were bifurcated at an earlier stage; neither the settlement nor this opinion affects them.

**3.** *Equitable Trust Co. v. Bratwursthaus Management Corp.* enunciates Virginia's choice of law rule for contract actions. "Virginia adheres to the principle that the law of the place of performance governs questions arising in connection with the performance of a contract." *Equitable Trust Co. v. Bratwursthaus Management Corp.*, 514 F.2d 565, 567 (4th Cir.1975). The Virginia Supreme Court stated Virginia's choice of law rule for tort actions as "the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong." *McMillan v. McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 663 (1979). Consequently, Virginia law determines the resolution of both issues.

(1928). Courts have narrowly interpreted the standard for an intended beneficiary. In *Valley Landscape Co. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977), the court held that a typical owner-architect contract, which lacks provisions directly benefitting a contractor, does not give a contractor standing to sue on that contract. And in *Professional Realty Corp. v. Bender*, 216 Va. 737, 222 S.E.2d 810 (1976), the court held that a buyer's promise to a seller to purchase realty does not evince an intent to benefit the realtor. The contract between V.I. and Servicemaster demonstrates less of an intent to benefit a third party beneficiary than the contracts in *Valley Landscape* and *Professional Realty* suggesting Radosevic does not constitute an intended beneficiary.

Virginia law also indicates that the four corners of a contract evidence whether contracting parties clearly and definitely intended to directly benefit a third party. *Obenshain v. Halliday*, 504 F.Supp. 946 (E.D.Va.1980). *See also Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 220 Va. 135, 255 S.E.2d 518 (1979). The terms of the instant contract do not manifest a clear and definite intent on the part of V.I. and Servicemaster to directly benefit Radosevic. The contract does not mention Radosevic. Indeed public.[4]

■ The facts of *Obenshain v. Halliday*, 504 F.Supp. 946 (E.D.Va.1980), resemble the instant situation. In *Obenshain* the executrix of the estate of a passenger who was killed in an airplane crash that allegedly occurred due to the failure of runway lights at a county airport[5] sued the county as thirty party beneficiary of a contract between the county and the United States to build, operate, and maintain the airport safely. The court held the executrix does not have standing to sue as a third party beneficiary because the contract does not demonstrate a clear and definite intent to benefit her:

> The county's exposure of liability to every member of the flying public, their associates, the adjoining property owners, and any other person who may happen to be in the area, is too broad to permit a contention that every injured party was an intended beneficiary under the public contract in this case.

*Obenshain*, 504 F.Supp. at 956–57 (quoting *Miree v. United States*, 242 Ga. 126, 136, 249 S.E.2d 573, 579 (1978)) (on certification from the Fifth Circuit and adopted by the Fifth Circuit at 588 F.2d 453 (1979)). Applying the analysis of *Obenshain* to the instant facts indicates Radosevic does not have standing to sue Servicemaster. Servicemaster's "exposure of liability" to anyone and everyone who physically enters V.I.'s premises is "too broad" to conclude that Radosevic is an intended beneficiary of the contract between V.I. and Servicemaster.

Consequently, in light of case law defining an "intended beneficiary," the four corners of the underlying contract do not demonstrate that Servicemaster clearly and definitely intended to directly benefit Radosevic. Therefore, she does not have standing to sue for breach of the contract between V.I. and Servicemaster.

■ Radosevic also alleges that Servicemaster's "negligent performance" or "negligent omission" of its contractual obligations results in tort liability. The issue that she presents—whether alleged nonfea-

---

**4.** The pertinent contract provisions are:

Servicemaster shall design and implement, with the concurrence of College, Standard Operational Procedures. These procedures shall be to coordinate efforts, skills, and other designated resources through the establishment of clearly defined objectives. The primary objectives shall include a clean, safe environment, and the ability to provide the designated levels of plant operations and maintenance.

Servicemaster shall advise and implement, to the extent requested and authorized by College, casualty prevention and control programs and measures for plant operations and maintenance in contribution to a structurally and functionally safe facility.

**5.** The county airport was in Virginia; therefore, the court applied Virginia law.

sance [6] of a contractual duty provides an injured third party with an independent tort cause of action—is an unsettled area of law. Apparently neither Virginia courts nor the federal courts that regularly interpret Virginia law has addressed this issue.

The RESTATEMENT (SECOND) OF TORTS outlines the differing resolutions of the above-mentioned issue. It provides in pertinent part:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> ...
> (b) he has undertaken to perform a duty owed by the other to the third person ...

RESTATEMENT (SECOND) OF TORTS § 324A(b) (1965). At first blush this section suggests that Servicemaster is liable to Radosevic. However, a thorough analysis of the subsequent caveat and comments indicates the broad language of § 324A does not necessarily encompass the instant situation. The caveat to § 324A provides "[t]he Institute [American Law Institute] expresses no opinion as to whether: (1) the making of a contract or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section ..." RESTATEMENT (SECOND) OF TORTS § 324A caveat (1965). Comment f to § 324A is even more on point:

> As in the case of harm resulting to the person to whom a promise is made, the ancient distinction between 'misfeasance'

and 'nonfeasance' has persisted where the harm results to third persons, and decisions holding that the breach of the promise to A can result in no tort liability to B have not been overruled.... [h]owever, ... the courts have tended to seize upon trivial and technical acts of the promisor as a 'commencement' of performance and an undertaking of the responsibility, sufficient to make him liable in tort to a third person.

RESTATEMENT (SECOND) OF TORTS § 324A comment f (1965). *See also* RESTATEMENT (SECOND) OF TORTS § 323 comment d (1965).

AMERICAN JURISPRUDENCE 2d *Negligence* provides six factors that indicate whether nonperformance of a contractual duty results in a tort cause of action for an injured third party:

> It has been held that whether a party to a transaction will be held liable for damage to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the third person, foreseeability of harm to him, degree of certainty that he suffered injury, closeness of the connection between the conduct complained of and the injury suffered, moral blame attached to such conduct, and prevention of future harm.

57 Am.Jur.2d *Negligence* § 50 (1971).

Applying these factors to the instant situation clearly prevents Radosevic from suing Servicemaster in tort. The instant facts do not demonstrate a sufficient "inten[t] to affect the third person" to satisfy the requirement of the first factor.[7] After all, V.I. and Servicemaster primarily intended to affect themselves with their contract; any intent to benefit an unidentified student named Radosevic is de minimis at

---

**6.** The lines between malfeasance, misfeasance, and nonfeasance are indistinct and, consequently, confusing at best. "Malfeasance" is "the doing of an act which a person ought not to do at all"; "misfeasance" is "the improper doing of an act which a person might lawfully do"; and "nonfeasance" is "the omission of an act which a person ought to do." *Black's Law Dictionary*, 902 (5th ed. 1979). Radosevic does not suggest a specific act that Servicemaster performed neg-

ligently. Consequently, if true, her allegations will constitute nonfeasance.

**7.** Although the determination of Radosevic's status as an incidental beneficiary for contract purposes is not determinative for tort purposes, the reasoning behind the contract conclusion supports an identical torts conclusion.

best. The second and third factors—the "foreseeability of harm" to the non-contracting party and the "degree of certainty that he suffered injury"—demand significantly more predictable situations than the instant case to support tort liability. The chain of events leading to Radosevic's paralysis also seems too far-fetched for the fourth factor—the "closeness of the connection between the conduct complained of and the injury suffered." Only the sixth factor—"prevention of future harm"—supports imposing tort liability on Servicemaster.

Radosevic cites several cases indicating that Servicemaster is liable to her in tort. However, all of these cases are distinguishable from the instant situation. Some differ due to the existence of an independent basis of tort liability. For example, in *Boyd, Higgins & Goforth, Inc. v. Mahone,* 142 Va. 690, 128 S.E. 259 (1925), an injured car passenger sued a construction company that had failed to maintain barricades to and post warnings about an impassable bridge. However, Virginia law imposes a tort duty upon persons constructing or repairing roads. Likewise in *Gravely v. Providence Partnership,* 549 F.2d 958 (4th Cir.1977), an architect's liability to a hotel guest was predicated upon an independent duty of an architect. The instant case, therefore, does not align with *Boyd, Higgins & Goforth, Inc. v. Mahone* or *Gravely v. Providence Partnership* because Radosevic has stated no independent basis of tort liability.

Other cases that Radosevic cites are distinguishable because they involve underlying instances of misfeasance rather than nonfeasance. For example, in *Crosby v. Meredith,* 300 F.2d 323 (4th Cir.1962), the court was concerned with whether a contractor had negligently constructed a temporary ramp at the entrance to a club house. The court in remanding the case to the trial court for jury determination indicated, "Reasonable men may differ as to whether unpainted lumber is slippery when damp and therefore, whether a proper construction of the ramp would have included hand rails and cross pieces in order to give more stability to persons using the ramp."

*Crosby v. Meredith,* 300 F.2d at 325. Negligent construction of a ramp is misfeasance; Radosevic's claim against Servicemaster involves nonfeasance. In *Boyd, Higgins & Goforth, Inc. v. Mahone,* 142 Va. 690, 128 S.E. 259 (1925), an injured car passenger sued a road contractor for failure to maintain barricades to and post warnings about an impassable bridge. This act—failure to follow specific contractual provisions—constitutes misfeasance rather than nonfeasance. *See also Gravely v. Providence Partnership,* 549 F.2d 958 (4th Cir.1977) (tort liability due to alleged negligent design and supervision of construction of a spiral staircase), and *City Gas Co. of Norfolk v. Lawrence,* 118 Va. 557, 88 S.E. 73 (1916) (tort liability based on failure to cover large hole in vestibule that defendant had cut).

Radosevic also asserts that the rule that "the independent contractor is not liable for an injury to person or to property of one not a party to the contract, occurring after the independent contractor has completed the work and turned it over to the owner or employer, and the same has been accepted by him" indicates that Servicemaster is liable in tort to Radosevic. *McCrorey v. Thomas,* 109 Va. 373, 379, 63 S.E. 1011, 1013 (1909). However, this rule enunciates a defense to tort liability rather than providing a tort cause of action. Va. Code Ann. § 8.01–39 (1984), which partially abrogates the independent contractor rule, supports this interpretation by stating that "it shall not be a defense by such contractor to such action that such contractor has completed such work or that such work has been accepted as satisfactory by the owner of the property ... or by the person hiring such contractor." Consequently, neither the rule of *McCrorey v. Thomas* nor its subsequent nullification provides Radosevic with a tort cause of action.

Consequently, upon application of the factors enumerated in AMERICAN JURISPRUDENCE 2d *Negligence,* this court holds that nonfeasance of a contractual duty does not provide an injured third party with an independent tort cause of action. Therefore, Servicemaster is not liable in tort to Radosevic.

Accordingly, Servicemaster's motion for summary judgment is granted.

### ORDER

For reasons set forth in the Memorandum Opinion entered this date, Servicemaster's motion for summary judgment as to Radosevic's claims against it is hereby ORDERED granted.

Three pending cross-claims are still in existence: Servicemaster against V.I., V.I. against ARA, and V.I. against Servicemaster. It is hereby ORDERED that these claims are bifurcated from Radosevic's claims against Servicemaster.

The court is of the opinion that no just reason exists for delay of entry of final judgment for Servicemaster on Radosevic's claims against it because the other claims have been bifurcated and involve other issues. Furthermore, some of the third-party claims may be mooted by final decision in the claims of Radosevic against Servicemaster.

Accordingly, final judgment is hereby granted to Servicemaster on the claims against it by Radosevic; and this shall be considered an appealable order.